UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

In re:

SAMEH H. AKNOUK, DENTAL SERVICES, P.C.,

                       Debtor.

Chapter 11
Case No. 22-11651(MG)
Subchapter V

----------------------------------------------------------------X

## DECLARATION OF DR. SAMEH H. AKNOUK, DDS IN SUPPORT OF DEBTOR'S OBJECTION TO MOTION OF UNITED STATES TRUSTEE FOR APPOINTMENT OF A PATIENT CARE OMBUDSMAN

DR. SAMEH H. AKNOUK, DDS, being duly sworn, declares and says:

1. I am the President and sole shareholder of Sameh H. Aknouk, Dental Services P.C., the above captioned Chapter 11 debtor (the "Debtor"), and, as such, I am fully familiar with the facts and circumstances set forth herein.

2. I submit this Declaration in support of the Debtor's Objection ("Objection") to the Motion of the United States Trustee for Appointment of a Patient Care Ombudsman Under 11 U.S.C. §§ 101(27A) and 333 (the "Motion") [ECF No. 33].

3. Debtor's counsel has advised me that a patient care ombudsman need not be appointed if the Court finds that either the Debtor does not qualify as a "health care business" or an ombudsman is not necessary for the protection of the patients under the specific facts of the case. For the reasons set forth herein, as well as those in the accompanying Objection by the Debtor, the Deponent believes that a court appointed patient care ombudsman is not necessary and would serve only to subject the Debtor to unnecessary administrative expense.

## BACKGROUND

4. The Debtor is a family owned and operated full-service general and cosmetic dentistry practice located at 1473 West Avenue, which is in the Parkchester neighborhood of

1

Bronx, New York. Declarant has been a licensed dentist for over thirty (30) years and the Debtor has been in operation for nearly twenty-five (25) years and has operated at the current business premises since 1998 after purchasing an existing practice at that location.

## ANALYSIS & FACTORS

5.      Debtor's counsel has further advised me that in order to determine whether it is necessary to appoint an ombudsman, courts typically consider certain factors. These factors are articulated below:

**I. The Cause of the Bankruptcy**

6.      First, the reason for the Debtor's Chapter 11 filing is not connected in any way to the quality of patient care offered by the Debtor. Although the Debtor was adversely affected by the economic fallout from COVID-19 Pandemic (the "Pandemic"), the primary reason for filing of the Chapter 11 case is the claim of the Debtor's former union and the related claim of the National Labor Relations Board ("NLRB") for amounts allegedly due in connection with a 2018 audit. While the Debtor vehemently disputes the claims and believes that it has very strong defenses in connection therewith, it simply lacks the resources to mount a proper litigation defense.

7.      The Debtor has many long standing, loyal patients that travel from all over the tri-state area to receive services from the Debtor, most of whom have continued to do so since the filing. To the best of my knowledge, the only patients that have declined to return to the Debtor for services since the onset of the Pandemic have done so because their insurance coverage has changed and not due to any dissatisfaction or complaints regarding patient care.

**II. The Presence and Role of Licensing or Supervising Entities**

8.      Declarant has been licensed by the State of New York as a dental practitioner since October 29, 1987. In order to renew my dental license every three years, I am required to complete sixty (60) credit hours of continued education. My next renewal is in October of this year, and I

have already completed approximately fifty-five (55) of the sixty (60) required credit hours. I recently attended seminars on topics including sleep apnea, crowns, dentures, implants and infection control. I also have also recently completed a course in Emergency Care and Safety Instruction, which awarded me a certification in emergency cardiac care, such as cardiopulmonary resuscitation (CPR). Additionally, I am a member of the Academy of General Dentistry, a professional organization of dental professionals from the United States and Canada.

9. Dr. Marina Aknouk, DDS, who started her employment with the Debtor in August 2022, became licensed by the State of New York as a dental practitioner on May 9, 2022. She graduated from New York University College of Dentistry in May 2020. She went on to complete a one-year residency at Stony Brook University and then completed a Chief Year (additional year of residency) at Stony Brook University, finishing in July 2022. In an effort to keep learning, she recently joined *Implant Ninja*, which is an educational network and resource.

10. In addition, the Debtor's facility is inspected by the New York State Department of Health and Mental Hygiene every two (2) years, with the most recent (passing) inspection being conducted in June 2021. The Debtor's on-site X-Ray equipment is also inspected by the same agency every three years, with its most recent (passing) inspection conducted in June 2021 (next inspection to occur June 2024).

### III. The Debtor's Past History of Patient Care

11. The Debtor is dedicated to providing excellent services with compassion and integrity to all of its patients which is evidenced by the fact that the Debtor <u>has never received a formal patient complaint</u> and enjoys rendering services to many repeat patients.

12. Since the filing, patient care has not been negatively affected. Either myself, or my daughter, Dr. Marina Aknouk, DDS, personally meet and treat every patient. Additionally, we employ highly trained and qualified dental assistants and dental hygienists to assist in the care of

3

patients. This aids in quality patient care and allows the dentists to spend ample time with the patient during their appointment.

13. During the Pandemic, the Debtor acquired UV lights for sterilization of the treatment rooms and air purifying systems throughout the office. This equipment continues to be utilized at present. The Debtor provides all of its employees with gloves, masks, face shields and disposable coats to be worn while interacting with patients and utilizes a cleaning service that thoroughly cleans the office and medical exam rooms after every business day.

**IV. The Ability of the Patients to Protect Their Rights**

14. During the patient's initial visit, the Debtor provides each patient with a patient care plan which includes a consent for services and a copy of the Hospital Insurance Portability and Accountability Act of 1996 (HIPPA) disclosure, which guarantees each patient's medical care and protects their medical records. Each patient is provided an opportunity to review this important information and inquire if they have any questions. The patient is then asked to acknowledge, by signature, that they have received this information and this acknowledgment is retained in each patient file electronically.

15. In addition, each patient is notified of the office procedures for reporting patient complaints. If a complaint is received, the Debtor's internal policy is that the complaint be addressed immediately by me and the Office Manager.

16. The Debtor utilizes an integrated, secure, technology platform called *Dentrix* to manage the practice. This practice management software is provided by Henry Schein which is a well-known and highly respected medical service and product provider throughout the world. This technology is utilized for a variety of applications including but not limited to the maintenance of patient records, appointments and billing. The wide variety of applications available to the Debtor through this system not only enables the Debtor to maintain and organize patient information but

allows the Debtor to operate in the most efficient and effective manner. *Dentrix* is fully compliant with HIPPA requirements. Each employee has their own login and password, and only certain employees have access to the patient's personal identifiable information. Therefore, the patient information which is maintained in *Dentrix* is secure, so patient privacy is not at risk.

17.    The costs associated with the *Dentrix* program are paid on a monthly basis, and the Debtor maintains a service contract with the provider to ensure the system is regularly updated and that the Debtor is in compliance with its use. Additionally, the Debtor takes advantage of training programs offered by the provider to both the dentists and its staff to ensure proper and effective usage of the software. The Debtor is current on its payments for the Dentrix system and does not believe that it will have any financial difficulty continuing to make these payments.

**V. The Level of Dependency of the Patients on the Facility**

18.    It is my understanding that because the Debtor operates in an office setting for consultation and outpatient care (as opposed to inpatient or continued day-to-day care), there is little to no dependence on the facility by the Debtor's patients. As such, I do not believe that this factor is relevant to the analysis.

19.    Notwithstanding, in the case of emergencies, patients are able to contact me directly via my personal cellphone, they can contact the office to be seen the same day, or they can simply 'walk-in' for an emergency appointment. We also utilize an afterhours answering machine service for patient convenience and emergent needs.

**VI.  The Likelihood of Tension Between the Interests of the Patients and the Debtor**

20.    The interests of the Debtor and its patients are aligned. The Debtor's goal is to reorganize and successfully emerge from Chapter 11. In order to do so, it must restructure its obligations and remain cash flow positive which will enable the Debtor to continue to provide the highest level of service to its patients as it has always done.

5

**VII. The Potential Injury to the Patients if the Debtor Reduced its Level of Patient Care**

21.   The Debtor is meeting and/or exceeding its level of patient care.  The Debtor is working to ensure that patient care is provided in an appropriate and planned manner consistent with patient's rights and needs.  The likely result of a reduction in the level of patient care would be a loss of patients and/or injury to the Debtor's reputation which would consequently reduce the Debtor's revenue and likewise its ability to reorganize.

**VIII. The Impact of the Cost of an Ombudsman on the Likelihood of a Successful Reorganization**

22.   The Debtor's cash flow has been improving since the onset of the Pandemic, however, the Debtor still has significant work ahead of it in order to restructure its obligations and emerge from Chapter 11 by way of a confirmable Chapter 11 plan which provides for a meaningful distribution to creditors.

23.   Each and every added layer of administrative expense makes it that much harder for the Debtor to emerge from this process.  In December 2022, the first month of the Chapter 11 case, the Debtor realized a profit of approximately $12,000.  Although this profit allows the Debtor to remain current in its post-petition obligations as they become due, the Debtor will also be required to remit payments pursuant to a Chapter 11 Plan of Reorganization as well as to pay its administrative costs including the allowed fees of professionals retained in its Chapter 11 case, i.e. Debtor's counsel and the Subchapter V Trustee. The appointment of a patient care ombudsman would be an added layer of expense, which in my opinion, is not only unnecessary but would at a minimum, reduce the ultimate recovery to creditors under the Chapter 11 Plan and could impair the Debtor's ability to reorganize and emerge from Chapter 11.

## CONCLUSION

24. Declarant submits that the Debtor maintains an excellent level of patient care and that proper procedures are in place to provide patients with continued proper care during the Chapter 11 Case. For these reasons and those stated in the Application, the Debtor respectfully submits that the appointment of an Ombudsman is neither appropriate nor necessary, and respectfully requests that the Motion be denied.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Dated: Bronx, New York
    February 9, 2022

                                                         */s/ Sameh H. Aknouk*
                                                         Dr. Sameh H. Aknouk, DDS