KIRBY AISNER & CURLEY, LLP
*Attorneys for the Debtor*
700 Post Road, Suite 237
Scarsdale, New York 10583
Tel: (914) 401-9500
Erica R. Aisner, Esq.
eaisner@kacllp.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:

SAMEH H. AKNOUK, DENTAL SERVICES, P.C.,          Chapter 11
                                                 Case No. 22-11651-MG
                                                 Subchapter V

                                  Debtor.
-------------------------------------------------------------X

## SMALL BUSINESS SUBCHAPTER V
## CHAPTER 11 REORGANIZATION PLAN

        Sameh H. Aknouk, Dental Services, P.C., hereby proposes the following Chapter 11 Plan

of Reorganization pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code.

### BACKGROUND

        The Debtor is a family owned and operated full-service general and cosmetic

dentistry practice located at 1473 West Avenue, Bronx, New York 10462. The Debtor has been

in operation for nearly twenty-five years and has operated at the current business premises since

1998. As a result of the COVID-19 pandemic, the Debtor's practice suffered financially and

depleted what cash reserves the Debtor customarily had on hand. Although trending in the right

direction, revenues have still not fully recovered to pre-pandemic levels and as a result, neither

has the Debtor's operating cash flow.

        The direct cause for the filing of this Chapter 11 case was litigation which was

commenced against the Debtor relating to alleged liabilities asserted by the Debtor's former

1

union, Local 553, International Brotherhood of Teamsters, formerly known as Local 854 (the "Union") as well as the National Labor Relations Board ("NLRB"). Although the Debtor vehemently disputes these liabilities, the mounting costs of defense seriously compromised the Debtor's already delicate financial health and stability and it was left with no choice but to seek the protection of the Bankruptcy Court to reorganize.

## ARTICLE I
## DEFINITIONS

For the purposes of this Plan, the following terms shall have following meanings (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires):

1.1     *"Administrative Claims"* shall mean all costs and expenses of administration of the Chapter 11 Case Allowed under §§ 503(b) or 330(a) of the Bankruptcy Code and that are entitled to priority under §507(a)(2), which may include Claims Allowed pursuant to §506(c) of the Bankruptcy Code.

1.2     *"Administrative Professional Fee Claim"* shall mean any Administrative Claim of a Professional subject to allowance under §330 of the Bankruptcy Code or an order of the Bankruptcy Court.

1.3     *"Allowed"* shall mean that portion of a Claim that, (i) has been timely filed with the Bankruptcy Court and is liquidated in amount and has not been objected to; (ii) has been listed by the Debtor in the Schedules as being neither contingent, unliquidated nor disputed; or (iii) has been allowed by a Final Order of the Bankruptcy Court.

1.4     *"Bankruptcy Code"* shall mean title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* in effect for this case.

1.5     *"Bankruptcy Court"* shall mean the United States Bankruptcy Court for the Southern District of New York, Manhattan Division.

1.6     *"Bankruptcy Rule(s)"* shall mean the Federal Rules of Bankruptcy Procedure as applicable to a case under the Bankruptcy Code and the Local Rules of the Bankruptcy Court, together with all amendments and modifications made from time to time thereto in effect for this case.

1.7     *"Cash"* shall mean legal tender of the United States of America or cash equivalents.

1.8     *"Chapter 11 Case"* shall mean the Chapter 11 proceeding pending in the Bankruptcy Court captioned, *In re Sameh H. Aknouk, Dental Services, P.C.,* Case No. 22-11651-MG.

1.9     *"Claim"* is defined in §101(5) of the Bankruptcy Code, and shall include, without limitation, any claims of whatsoever type or description against the Debtor, any claim for pre-petition interest, post-petition interest or contingent interest, any claim against the Debtor arising out of the rejection of executory contracts, any claim against the Debtor arising from the recovery of property under §§ 550 or 553 of the Bankruptcy Code and any claim against the Debtor that does not arise until after the commencement of the chapter 11 case for a tax entitled to priority under §507(a) of the Bankruptcy Code.

1.10    *"Class"* shall mean a class of holders of Claims described in Article III of this Plan.

1.11    *"Confirmation Date"* shall mean the date upon which the Confirmation Order is entered by the Bankruptcy Court.

1.12    *"Confirmation Order"* shall mean the order of the Bankruptcy Court pursuant to §1129 of the Bankruptcy Code confirming the Plan.

1.13    *"Debtor"* shall mean Sameh H Aknouk, Dental Services, P.C.

1.14    *"Disbursing Agent"* shall mean the Debtor, who shall act in such capacity in order to effectuate the payment of distributions under the Plan.

1.15    *"Disputed"* shall mean a Claim, or any portion of a Claim, that is not Allowed.

1.16    *"Effective Date"* shall mean the date upon which the Confirmation Order becomes a Final Order and this Plan goes effective.

1.17    *"Estate"* shall mean the estate of the Debtor created by the Chapter 11 Case pursuant to Bankruptcy Code section 541.

1.18    *"Final Order"* shall mean an order or judgment which has not been stayed and as to which order or judgment the time to appeal or seek review or rehearing has expired and as to which no appeal, petition for review or rehearing is pending.

1.19    *"Impaired"* shall mean any Claim of class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.20    *"Plan"* shall mean this Chapter 11 Plan and any amendments hereto or modifications hereof made in accordance with the provisions of the Bankruptcy Code.

1.21    *"Plan Fund"* shall mean the Debtor's Cash on hand and disposable income over the five (5) year period following the Effective Date.

1.22    *"Priority Claim"* shall mean a Claim, other than an Administrative Claim, that is

entitled to priority under §507 of the Bankruptcy Code.

1.23 *"Priority Tax Claim"* shall mean a Claim against the Debtor to the extent entitled to priority in payment under §507(a)(8) of the Bankruptcy Code.

1.24 *"Professionals"* shall mean those persons or entities: (a) retained pursuant to an order of the Bankruptcy Court in accordance with §§ 327 or 1103 of the Bankruptcy Code entitled to compensation for services rendered prior to the Effective Date pursuant to §§ 327, 328, 329, 330 and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to § 503(b)(2) and (4) of the Bankruptcy Code.

1.25 *"SBA"* shall mean the United States Government on behalf of the U.S. Small Business Administration.

1.26 *"Secured Claim"* shall mean a Claim that is secured by a lien on property of the Debtor's Estate in accordance with §506(a) of the Bankruptcy Code.

1.27 *"Schedules"* shall mean the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by §521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments thereto.

1.28 *"Unimpaired"* shall mean, with respect to any Class, that such Class is not Impaired.

1.29 *"Unsecured Claim"* shall mean any Claim that is not an Administrative Claim, Priority Claim or Secured Claim, including, without limitation, Claims based upon pre-petition trade accounts payable or Claims based upon the rejection of an executory contract during the pendency of the Chapter 11 Case.

## ARTICLE II
## DESIGNATION OF CLAIMS

All Claims, as defined herein and in §101(5) of the Bankruptcy Code against the Debtor, of whatever nature, whether or not scheduled or liquidated, absolute or contingent, whether resulting in an Allowed Claim or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

2.1 Classification of Claims. Each of the following sections of this Article II provides explanations of the different Claim classifications. Administrative Expense Claims, Administrative Professional Fee Claims, and Priority Tax Claims have not been classified and are excluded from the Classes set forth in Sections 2.2 and 3.2 in accordance with §1123(a)(1) of the

Bankruptcy Code.

2.2    <u>Classes</u>. Persons holding Claims against the Debtor are grouped in accordance with §1122 of the Bankruptcy Code, as follows:

Class 1: Allowed Secured Claim of the SBA.

Class 2: Allowed Non-Tax Priority Claims.

Class 3: Allowed General Unsecured Claims.

Class 4: Allowed Interest in the Debtor.

**ARTICLE III**
**TREATMENT OF CLAIMS UNDER THE PLAN**

3.1    <u>Unclassified Claims</u>.

(a)    <u>Allowed Administrative Claims other than Administrative Professional Fee Claims</u>:  These Allowed Claims shall be paid in the ordinary course and according to the terms and conditions of the respective contracts with respect to such Claim as the Debtor's Cash allows.

(b)    <u>Allowed Administrative Professional Fee Claims</u>: Allowed Administrative Professional Fee Claims shall be paid in full, in Cash, upon the later to occur of, (i) entry of an Order of the Bankruptcy Court allowing the Professional fees, and (ii) the Effective Date, except as otherwise agreed by the respective Professional.

(c)    <u>Allowed Priority Tax Claims</u>:  Allowed Priority Tax Claims pursuant to Section 507(a)(8) of the Bankruptcy Code, shall be paid in full, in Cash, plus statutory interest, in equal quarterly installments beginning on the Effective Date and continuing for five (5) years.

3.2    <u>Classified Claims</u>:

(a)    <u>Class 1</u>:  Class 1 shall consist of the sole claim of the SBA. The SBA shall receive payment in full of its Allowed Class 1 Secured Claim in accordance with the terms of the

underlying loan documents. The holder of the Class 1 Claim is unimpaired pursuant to Section 1124 of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

(b)   <u>Class 2</u>: Class 2 shall consist of Allowed Non-Tax Priority Claims. The Allowed Class 2 Claims shall be paid in full, in Cash, in equal quarterly installments beginning on the Effective Date and continuing for five (5) years. The holders of the Allowed Class 2 Claims are impaired pursuant to Section 1124 of the Bankruptcy Code and are entitled to vote to accept or reject the Plan.

(c)   <u>Class 3</u>:  Class 3 shall consist of Allowed General Unsecured Claims. Holders of Allowed Class 3 General Unsecured Claims shall receive up to 100% of their Allowed Class 3 Claims, without interest, from the remaining balance of the Plan Funds, after payment in full of all Unclassified Claims, Allowed Professional Fee Claims, the Allowed Secured Claims of Classes 1 and 2.  Payments to the Allowed Class 3 Claims shall commence on the Effective Date and shall continue in consecutive equal quarterly installments for five (5) years. The holders of the Allowed Class 3 Claims are impaired pursuant to Section 1124 of the Bankruptcy Code and are entitled to vote to accept or reject the Plan.

(d)   <u>Class 4</u>: Class 4 shall consist of the Debtor's Interest Holder. The Debtor's Interest Holder will retain his interest in the Debtor but shall not receive any distribution on account of such Interest during the pendency of the Plan. The Class 4 Interest Holder is impaired pursuant to Section 1124 of the Bankruptcy Code and is entitled to vote to accept or reject the plan.

3.3   <u>Acceptance by Impaired Classes</u>:  Classes 2, 3 and 4 shall have accepted the Plan if (i) the holders (other than any holder designated under §1126 of the Bankruptcy Code) of at least two-thirds in amount, and (ii) more than one-half in number, of the holders of Allowed Claims and Interests actually voting in such Class have voted to accept the Plan.

3.4    Presumed Acceptance of the Plan.  Class 1 is unimpaired under the Plan, and, therefore, is deemed to accept the Plan under §1126(f) of the Bankruptcy Code.

## ARTICLE IV
## MEANS FOR EXECUTION

4.1    Plan Funding.  The Plan shall be funded from the Debtor's Cash on hand and disposable income over the five (5) year period following the Effective Date.

4.2    Distribution of Cash.  Except as otherwise provided in the Plan, including without limitation Article VIII of this Plan, the Cash required to be distributed to holders of Allowed Claims under the Plan shall be distributed by the Disbursing Agent as each distribution comes due under this Plan, except that to the extent that a Claim becomes an Allowed Claim after the respective distribution date, in which case distribution shall be made within fourteen (14) days after the order allowing such Claim becomes a Final Order.

Any property or notice which a person or entity is or becomes entitled to receive pursuant to the Plan shall be delivered by regular mail, postage prepaid, in an envelope addressed to that person or entity at the address indicated on a properly filed proof of Claim or, absent such a proof of Claim, the address that is listed for that person or entity on the Schedules; provided that any person or entity entitled to a distribution may notify the Disbursing Agent in writing of its change of address, which address shall become the address for the Disbursing Agent to mail further distributions, if any. The date of distribution hereunder shall be the date of mailing, and the property distributed in accordance with this Section shall be deemed delivered to such person or entity regardless of whether such property is actually received by that person or entity.

Any other provision of the Plan to the contrary notwithstanding, no payments of fractions of cents will be made.  Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding such faction to the nearest whole cent (up or down).

4.3     Unclaimed Funds. Except as otherwise provided herein, in the event any claimant fails to Claim any distribution within one hundred twenty (120) days from the date of such distribution, such claimant shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such Cash was distributed shall be treated as a disallowed Claim.

4.4     Disbursing Agent: Notwithstanding the provisions set forth in section 1194 of the Bankruptcy Code, the Debtor shall be the Disbursing Agent and shall make all payments due under this Plan. The Debtor is both capable of issuing such payments and the cost for doing so will be negligible as compared to the Subchapter V trustee. The Debtor believes that proceeding in this manner is in the best interests of the estate and its creditors.

## ARTICLE V
## SUBCHAPTER V PROVISIONS

5.1     Liquidation Analysis. In order to confirm this Plan the Debtor must establish that all creditors and equity interest holders who do not accept the Plan will receive at least as much as such claim holder or equity interest holder would receive in a Chapter 7 liquidation.  As set forth in the liquidation analysis attached hereto as Exhibit "B", in the event of a liquidation, unsecured creditors would not receive any distribution as all proceeds would go to the Debtor's only secured creditor, the SBA. As such, the Debtor submits that the Plan satisfies this requirement for confirmation.

5.2     Projections. In order to confirm this Plan, the Debtor must establish that it will have enough cash over the life of the Plan to make the required distributions due hereunder. Section 1191(d) of the Bankruptcy Code requires that all of the Debtor's disposable income be contributed to the Plan. Attached hereto as Exhibit "A" are financial projections which demonstrate that the Plan includes all of the Debtor's disposable income. As such, the Debtor submits that the Plan satisfies this requirement for confirmation.

**ARTICLE VI**
**EXECUTORY CONTRACTS**

6.1     Assumption of Executory Contracts. Any contract that is executory and any unexpired leases to which the Debtor is a party and which have not been assumed or rejected pursuant to the Bankruptcy Code during the pendency of this Chapter 11 Case, shall be deemed assumed as of the Effective Date pursuant to §§365 and 1123 of the Bankruptcy Code.

6.2     **DEADLINE: Bar Date For Cure Claims. Any party asserting a cure claim associated with the assumption of an executory contract or unexpired lease must file its cure claim no later than four (14) days prior to the first date noticed for a hearing to consider confirmation of this Plan.** The Debtor does not believe that any cure claims exist.

**ARTICLE VII**
**GENERAL AND MISCELLANEOUS PROVISIONS**

7.1     Modification of the Plan.  The Debtor reserves the right, in accordance with §1127 of the Bankruptcy Code, to amend or modify the Plan with order of the Bankruptcy Court as may be required.  After the Effective Date, the Debtor may, subject to order of the Bankruptcy Court, and in accordance with §1127 of the Bankruptcy Court, remedy any defect or omission or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

7.2     Article and Section References**.** Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

7.3     Payment Dates**.** If any payment or act under the Plan is required to be made or falls

on a date which shall be a Saturday, Sunday or a legal holiday, the making of such payment or performance of such act may be completed on the next succeeding business day and shall be deemed to have been completed timely.

7.4    Notices. Any notices to be forwarded under the Plan shall be in writing and sent by certified mail, return receipt requested, postage pre-paid; or by overnight mail or hand delivery, addressed as follows:

**If to the Debtor:**

SAMEH H. AKNOUK, DENTAL SERVICES, P.C.
1473 West Avenue
Bronx, New York 10462
Attn: Dr. Sameh H. Aknouk, DDS

with a copy to:

KIRBY AISNER & CURLEY LLP
700 Post Road, Suite 237
Scarsdale, New York 10583
Attn:   Erica R. Aisner, Esq.

The Debtor may designate in writing any other address for purposes of this section, which designation shall be effective upon receipt.  Any payment required under the Plan shall be deemed to have been paid on the date when such payment is mailed.

7.5    Enforceability. Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any and all other provisions of the Plan.

7.6    Applicable Law. Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, except to the extent that other provisions of Federal law are applicable.

7.7     Successors and Assigns.  The rights and obligations of any entity named or referred to in the Plan shall be binding upon and inure to the benefit of the successors and assigns of such entity.

7.8     Reservation of Rights.   Neither the filing of this Plan, nor any statement or provision contained herein, shall be or be deemed to be an admission against interest. In the event that the Effective Date does not occur, neither this Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of this Chapter 11 Case.

7.9     Post-Confirmation Reports.  The Disbursing Agent shall be responsible for filing quarterly post-confirmation reports with the Bankruptcy Court, until the earlier of (a) conversion or dismissal of this Chapter 11 Case or (b) entry of a final decree closing this Chapter 11 Case.

7.10     Withdrawal or Revocation of the Plan.  The Debtor reserves the right to revoke or withdraw the Plan prior to the Effective Date. If the Debtor revokes or withdraws the Plan, then the result shall be the same as if the Confirmation Order was not entered and the Effective Date did not occur.

7.11     Interpretation, Rules of Construction, Computation of Time, and Choice of Law.  Any term used in the Plan that is not defined in the Plan, either in Article I (Definitions) or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules. Without limiting the foregoing, the rules of construction set forth in §102 of the Bankruptcy Code shall apply to the Plan, unless superseded herein. The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan as a whole and not to any particular Article, Section, subsection or clause contained in the

Plan, unless the context requires otherwise. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

7.12    <u>No Admissions</u>.  Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including without limitation, any liability on or treatment of any Claim, or the propriety of a Claim's classification.

**ARTICLE VIII**
**RESOLUTION OF DISPUTED CLAIMS & RESERVES**

8.1    <u>Objections</u>.  An objection to either the allowance of a Claim or an amendment to the Debtor's Schedules shall be in writing and filed with the Bankruptcy Court no later than the Effective Date.

8.2    <u>Amendment of Claims</u>.  A Claim may be amended prior to the Effective Date only as agreed upon by the Debtor and the holder of such Claim and as approved by the Bankruptcy Court or as otherwise permitted by the Bankruptcy Code and Bankruptcy Rules.  After the Effective Date, a Claim may be amended as agreed upon by the Debtor and the holder of the Claim and the Debtor to decrease, but not increase, the face amount thereof.

8.3    <u>Reserve for Disputed Claims</u>.  The Disbursing Agent shall reserve from the Plan Distribution Fund, on account of each holder of a Disputed Claim, in Cash, the amount that would otherwise be distributable to such holder were such Disputed Claim an Allowed Claim on the Effective Date (the "<u>Disputed Claims Reserve</u>"). The Cash so reserved for the holder of such Disputed Claim, to the extent such Disputed Claim is Allowed, shall be distributed as provided herein only after such Disputed Claim becomes a subsequently Allowed Claim. The holder of a subsequently Allowed Claim shall not be entitled to any interest on the Allowed Claim, regardless of when distribution thereon is made to or received by such holder.

8.4     Distributions to Holders of Subsequently Allowed Claims. Unless another date is agreed on by the Debtor and the holder of a particular subsequently Allowed Claim, the Debtor shall, within fourteen (14) days after an order Allowing the formerly Disputed Claim is entered by the Bankruptcy Court, and after such order becomes a Final Order, make such distribution consistent with the terms of the Plan.

8.5     Estimation of Disputed Claims. The Debtor reserves the right to seek an order or orders from the Bankruptcy Court estimating the maximum dollar amount of Allowed and Disputed Claims in each Class of Claims, inclusive of contingent and/or unliquidated Claims, or otherwise determining and fixing the amount of the Disputed Claims Reserve for each Class and may seek to set the amount of any particular Claim for final allowance purposes pursuant to §§105 and 502(c) of the Bankruptcy Code. This estimate shall be used to calculate and fix distributions to holders of Allowed Claims and the amount of the respective Disputed Claims Reserve. Such a procedure may also be utilized for Administrative Claims, Priority Tax Claims and Priority Claims. In the event the Debtor seeks to estimate such Claims, Disputed Claims Reserves shall be established for each such category of Claims.

ARTICLE IX
EFFECT OF CONFIRMATION, DISCHARGE,
SURRENDER AND CANCELLATION OF CLAIMS

9.1     Discharge. The Debtor intends to seek confirmation of this Plan under Section 1191(a) of the Bankruptcy Code. Assuming that confirmation under this section is granted, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in Section 1141(d)(1)(A) of the Bankruptcy Code, except as to obligations imposed under the Plan or to the extent provided in Section 1141(d)(6) of the Bankruptcy Code.

9.2     In the event that the Court does not grant confirmation under Section 1191(a) of the

Bankruptcy Code, the Debtor intends to seek confirmation alternatively under Section 1191(b). In such case, the discharge provided for in Section 1141 as set forth above will not be effective until such time as the Court affirmatively grants such discharge in accordance with Section 1192 of the Bankruptcy Code which may be upon the last payment due after three (3) years from the Effective Date or such other time as is fixed by the Court, not to exceed five (5) years from the Effective Date.

9.3     <u>Exculpation</u>. Neither the Debtor, nor any of its respective trustees, officers, employees, attorneys, advisors, agents, representatives and assigns (the "<u>Released Parties</u>") shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, confirmation or consummation of the Plan, or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with this Chapter 11 Case or the Plan except with respect to (a) their obligations under the Plan and any related agreement or (b) for bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. Notwithstanding any other provision hereof, nothing in Sections 9.3 or 9.4 hereof shall effect a release of any Claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any Claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in Sections 9.3 or 9.4 hereof enjoin the United States or any state or local authority from bringing any Claim, suit, action or other proceedings against the Released Parties referred to herein for any liability whatever, including without limitation, any Claim, suit or action arising under the Internal Revenue Code, the

environmental laws or any criminal laws of the United States or any state and local authority, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Parties, or (b) limit the liability of the Released Parties pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.

9.4     <u>Confirmation Injunction</u>**.** On the Effective Date, all persons or entities who have held, hold or may hold Administrative Claims or Claims against the Debtor are enjoined from taking any of the following actions against or affecting the Debtor with respect to such Claims or Administrative Claims, except as otherwise set forth in the Plan and other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order or other pending appeals of orders of the Bankruptcy Court:

> 9.4.1   Commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, arbitration, or other proceeding of any kind against the Debtor or the assets of the Debtor;

> 9.4.2   Enforcing, levying, attaching, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the assets of the Debtor;

> 9.4.3   Creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor or its assets;

> 9.4.4   Asserting any setoff, right of subrogation, or recoupment of any kind, directly or indirectly, or against the Debtor, the assets of the Debtor; and

> 9.4.5   Proceeding in any manner and any place whatsoever that does not conform to or comply with the provisions of the Plan.

**ARTICLE X**
**EVENTS OF DEFAULT**

10.1    The Debtor shall be in default under this Plan in in the event that it fails to satisfy its payment obligations, including but not limited to its obligations to make payments on time or in the amount set forth in this Plan, and such default is not cured within ten (10) days thereafter.

10.2    Upon the occurrence of an uncured default under the Plan, any holder of a Claim shall have the right to seek relief from the Bankruptcy Court to enforce the Plan, convert or dismiss the case, or seek any other relief as just and appropriate.

**ARTICLE XI**
**RETENTION OF JURISDICTION**

11.1    The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case:

(a) To determine all controversies relating to or concerning the allowance of Claims upon objection to such Claims by any party in interest;

(b) To determine requests for payment of Administrative and proof of Claims, including any and all Administrative Professional Fee Claims;

(c) To determine and, if necessary, liquidate, any and all Claims arising from the rejection of any executory contracts or unexpired leases;

(d) To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C §§ 157 and 1334;

(e) To determine all disputed, contingent or unliquidated Claims;

(f) To determine requests to modify the Plan pursuant to §1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistencies in this Plan or Confirmation Order to the extent authorized by the Bankruptcy Code;

(g) To make such orders as are necessary or appropriate to enforce and carry out the provisions of the Plan;

(h) To resolve controversies and disputes regarding the interpretation or enforcement of the terms of the Plan and the Confirmation Order; and

(i)  To enter a final decree closing the Chapter 11 Case.

Dated: Bronx, New York
        March 8, 2023

SAMEH H. AKNOUK, DENTAL SERVICES, P.C.

By: */s/ Sameh H. Aknouk* _____
Dr. Sameh H. Aknouk, DDS, President

KIRBY AISNER & CURLEY LLP
*Attorneys for the Debtor*
700 Post Road, Suite 237
Scarsdale, New York 10583
Tel: (914) 401-9500
eaisner@kacllp.com

By: */s/ Erica R. Aisner* _____
    Erica R. Aisner

# Exhibit A

# Sameh Aknouk DDS
# 24 Month Projections

| | Feb-23 | Mar-23 | Apr-23 | May-23 | Jun-23 | Jul-23 | Aug-23 | Sep-23 | Oct-23 |
|---|---|---|---|---|---|---|---|---|---|
| **Total Income** | $ 83,621.35 | $ 78,033.48 | $ 60,678.49 | $ 64,950.63 | $ 81,726.40 | $ 78,823.33 | $ 84,457.56 | $ 98,878.51 | $ 89,773.62 |
| **Cost of Goods Sold** | | | | | | | | | |
| Dental Supplies | 2,000.00 | 2,000.00 | 3,000.00 | 4,000.00 | 4,000.00 | 5,000.00 | 2,000.00 | 3,000.00 | 4,000.00 |
| Lab Fees | 7,780.00 | $ 6,613.00 | $ 8,013.40 | $ 6,224.00 | $ 6,535.20 | $ 7,857.80 | $ 6,301.80 | $ 6,224.00 | $ 7,873.36 |
| **Total Cost of Goods Sold** | $ 9,780.00 | $ 8,613.00 | $ 11,013.40 | $ 10,224.00 | $ 10,535.20 | $ 12,857.80 | $ 8,301.80 | $ 9,224.00 | $ 11,873.36 |
| **Gross Profit** | $ 73,841.35 | $ 69,420.48 | $ 49,665.09 | $ 54,726.63 | $ 71,191.20 | $ 65,965.53 | $ 76,155.76 | $ 89,654.51 | $ 77,900.26 |
| **Expenses** | | | | | | | | | |
| Automobile Expense | 965.00 | 965.00 | 965.00 | 965.00 | 965.00 | 965.00 | 965.00 | 965.00 | 965.00 |
| Continuing Education | 847.50 | | | | | | 90.00 | | |
| Credit Card Processing Fees | 1,459.72 | 1,560.67 | 1,213.57 | 1,299.01 | 1,634.53 | 1,576.47 | 1,689.15 | 1,977.57 | 1,795.47 |
| Insurance Expenses | 633.70 | 371.49 | 354.77 | 423.63 | 306.05 | 2,466.41 | 420.14 | 374.14 | 433.21 |
| Legal & Professional Fees | | | | | 15,000.00 | | | | |
| Subchapter V Trustee Fees | | | | | 15,000.00 | | | | |
| Office Cleaning | 2,250.00 | 1,500.00 | 1,537.02 | 1,537.02 | 1,574.04 | 1,850.00 | 824.04 | 2,666.00 | 824.04 |
| Office Expenses | 1,291.57 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 |
| Outside Services | 16,875.60 | 16,875.60 | 16,875.60 | 16,875.60 | 16,875.60 | 16,875.60 | 16,875.60 | 16,875.60 | 16,875.60 |
| Payroll Expenses | 27,807.66 | 27,807.66 | 27,807.66 | 27,807.66 | 27,807.66 | 22,630.79 | 27,438.82 | 21,875.07 | 23,730.32 |
| Payroll Processing Fees | 536.57 | 536.57 | 536.57 | 536.57 | 536.57 | 533.64 | 527.78 | 664.12 | 510.23 |
| Payroll Tax Expenses | 12,151.15 | 12,151.15 | 12,151.15 | 12,151.15 | 12,151.15 | 7,350.20 | 8,724.21 | 7,052.07 | 10,353.04 |
| Rent Expense | 8,558.52 | 8,558.52 | 8,558.52 | 8,558.52 | 8,558.52 | 8,558.52 | 8,558.52 | 8,558.52 | 8,558.52 |
| Telephone Expense | 382.69 | | | 756.94 | | 758.46 | | 830.15 | 405.65 |
| Utilities | 927.24 | | 927.24 | | | 927.24 | | 927.24 | |
| Payments to Creditors | | | | | 2,500.00 | | | 2,500.00 | |
| SBA Loan Payments | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 |
| **Total Expenses** | $ 75,417.92 | $ 72,257.66 | $ 72,858.10 | $ 72,842.10 | $ 104,840.12 | $ 66,423.33 | $ 68,044.26 | $ 67,196.48 | $ 66,382.08 |
| **Net Income** | -$ 1,576.57 | -$ 2,837.18 | -$ 23,193.01 | -$ 18,115.47 | -$ 33,648.92 | -$ 457.80 | $ 8,111.50 | $ 22,458.03 | $ 11,518.18 |

# Sameh Aknouk DDS
## 24 Month Projections

| | Nov-23 | Dec-23 | Jan-24 | Feb-24 | Mar-24 | Apr-24 | May-24 | Jun-24 | Jul-24 |
|---|---|---|---|---|---|---|---|---|---|
| **Total Income** | $ 89,820.01 | $ 77,204.96 | $ 71,656.42 | $ 72,937.34 | $ 66,897.08 | $ 84,457.56 | $ 73,586.79 | $ 81,112.71 | $ 83,621.35 |
| **Cost of Goods Sold** | | | | | | | | | |
| Dental Supplies | 4,000.00 | 5,000.00 | 2,000.00 | 3,000.00 | 4,000.00 | 4,000.00 | 5,000.00 | 2,000.00 | 3,000.00 |
| Lab Fees | $ 6,613.00 | $ 7,391.00 | $ 7,624.40 | $ 6,613.00 | $ 6,224.00 | $ 7,857.80 | $ 6,846.40 | $ 7,546.60 | $ 7,780.00 |
| **Total Cost of Goods Sold** | $ 10,613.00 | $ 12,391.00 | $ 9,624.40 | $ 9,613.00 | $ 10,224.00 | $ 11,857.80 | $ 11,846.40 | $ 9,546.60 | $ 10,780.00 |
| **Gross Profit** | $ 79,207.01 | $ 64,813.96 | $ 62,032.02 | $ 63,324.34 | $ 56,673.08 | $ 72,599.76 | $ 61,740.39 | $ 71,566.11 | $ 72,841.35 |
| **Expenses** | | | | | | | | | |
| Automobile Expense | 965.00 | 965.00 | 965.00 | 965.00 | 965.00 | 965.00 | 965.00 | 965.00 | 965.00 |
| Continuing Education | 90.00 | | | | 90.00 | | | 90.00 | |
| Credit Card Processing Fees | 1,796.40 | 1,544.10 | 1,433.13 | 1,458.75 | 1,337.94 | 1,689.15 | 1,471.74 | 1,622.25 | 1,672.43 |
| Insurance Expenses | 407.57 | 704.45 | 407.57 | 704.45 | 981.86 | 187.23 | 407.57 | 704.45 | 407.57 |
| Legal & Professional Fees | | | | | | | | | |
| Subchapter V Trustee Fees | | | | | | | | | |
| Office Cleaning | 2,287.02 | 1,500.00 | 1,537.02 | 1,574.04 | 2,250.00 | 1,500.00 | 1,537.02 | 1,537.02 | 1,574.04 |
| Office Expenses | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 |
| Outside Services | 16,875.60 | 16,875.60 | 16,875.60 | 16,875.60 | 16,875.60 | 16,875.60 | 16,875.60 | 16,875.60 | 16,875.60 |
| Payroll Expenses | 20,754.75 | 22,630.79 | 27,438.82 | 21,875.07 | 20,592.98 | 18,798.35 | 17,857.14 | 23,730.32 | 20,754.75 |
| Payroll Processing Fees | 631.94 | 533.64 | 527.78 | 664.12 | 513.16 | 513.15 | 629.01 | 510.23 | 631.94 |
| Payroll Tax Expenses | 6,703.99 | 7,350.20 | 8,724.21 | 7,052.07 | 8,708.58 | 8,363.24 | 7,874.57 | 10,353.04 | 6,703.99 |
| Rent Expense | 8,558.52 | 8,558.52 | 9,200.00 | 9,200.00 | 9,200.00 | 9,200.00 | 9,200.00 | 9,200.00 | 9,200.00 |
| Telephone Expense | | 774.26 | | 769.54 | 830.15 | 405.65 | | 774.26 | |
| Utilities | 927.24 | | 927.24 | | 927.24 | | 927.24 | | 927.24 |
| Payments to Creditors | | 2,500.00 | | | 2,500.00 | | | 2,500.00 | |
| SBA Loan Payments | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 |
| **Total Expenses** | $ 61,929.03 | $ 65,867.56 | $ 69,967.37 | $ 63,069.64 | $ 67,703.51 | $ 60,428.37 | $ 59,675.89 | $ 70,793.17 | $ 61,643.56 |
| **Net Income** | $ 17,277.98 | -$ 1,053.60 | -$ 7,935.35 | $ 254.70 | -$ 11,030.43 | $ 12,171.39 | $ 2,064.50 | $ 772.94 | $ 11,197.79 |

# Sameh Aknouk DDS
# 24 Month Projections

|  | Aug-24 | Sep-24 | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Total |
|---|---|---|---|---|---|---|---|
| Total Income | $ 71,078.15 | $ 98,878.51 | $ 81,948.92 | $ 71,078.15 | $ 81,948.92 | $ 75,259.22 | $ 1,902,429.46 |
| Cost of Goods Sold |  |  |  |  |  |  |  |
| Dental Supplies | 4,000.00 | 4,000.00 | 5,000.00 | 2,000.00 | 3,000.00 | 4,000.00 | $ 83,000.00 |
| Lab Fees | $ 6,613.00 | $ 6,224.00 | $ 7,624.40 | $ 6,613.00 | $ 7,624.40 | $ 7,002.00 | $ 169,619.56 |
| Total Cost of Goods Sold | $ 10,613.00 | $ 10,224.00 | $ 12,624.40 | $ 8,613.00 | $ 10,624.40 | $ 11,002.00 | $ 252,619.56 |
| Gross Profit | $ 60,465.15 | $ 88,654.51 | $ 69,324.52 | $ 62,465.15 | $ 71,324.52 | $ 64,257.22 | $ 1,649,809.90 |
| Expenses |  |  |  |  |  |  |  |
| Automobile Expense | 965.00 | 965.00 | 965.00 | 965.00 | 965.00 | 965.00 | $ 23,160.00 |
| Continuing Education | 90.00 |  |  | 90.00 |  |  | $ 1,387.50 |
| Credit Card Processing Fees | 1,421.56 | 1,337.94 | 1,638.98 | 1,421.56 | 1,638.98 | 1,505.18 | $ 37,196.25 |
| Insurance Expenses | 704.45 | 981.86 | 187.23 | 704.45 | 981.86 | 187.23 | $ 14,443.34 |
| Legal & Professional Fees |  |  |  |  |  |  | $ 15,000.00 |
| Subchapter V Trustee Fees |  |  |  |  |  |  | $ 15,000.00 |
| Office Cleaning | 1,850.00 | 2,250.00 | 1,500.00 | 1,537.02 | 2,250.00 | 1,800.00 | $ 41,045.34 |
| Office Expenses | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | $ 28,891.57 |
| Outside Services | 16,875.60 | 16,875.60 | 16,875.60 | 16,875.60 | 16,875.60 | 16,875.60 | $ 405,014.40 |
| Payroll Expenses | 22,630.79 | 27,438.82 | 21,875.07 | 20,754.75 | 22,630.79 | 27,438.82 | $ 571,915.31 |
| Payroll Processing Fees | 533.64 | 527.78 | 664.12 | 631.94 | 533.64 | 527.78 | $ 13,492.49 |
| Payroll Tax Expenses | 7,350.20 | 8,724.21 | 7,052.07 | 6,703.99 | 7,350.20 | 8,724.21 | $ 211,974.04 |
| Rent Expense | 9,200.00 | 9,200.00 | 9,200.00 | 9,200.00 | 9,200.00 | 9,200.00 | $ 213,743.72 |
| Telephone Expense | 769.54 | 405.65 |  | 774.26 |  |  | $ 8,637.20 |
| Utilities |  |  | 927.24 |  |  | 927.24 | $ 10,199.64 |
| Payments to Creditors |  | 2,500.00 |  |  | 2,500.00 |  | $ 17,500.00 |
| SBA Loan Payments | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | $ 17,544.00 |
| Total Expenses | $ 64,321.78 | $ 73,137.86 | $ 62,816.31 | $ 61,589.57 | $ 66,857.07 | $ 70,082.06 | $ 1,646,144.80 |
| Net Income | -$ 3,856.64 | $ 15,516.65 | $ 6,508.21 | $ 875.57 | $ 4,467.45 | -$ 5,824.85 | $ 3,665.10 |

# Exhibit B

**In re Sameh H. Aknouk, Dental Services, P.C.,**
**Chapter 11 Debtor**
**SDNY Case No. 22-11651-MG**

**ESTIMATED LIQUIDATION ANALYSIS AS OF JANUARY 31, 2023**

| Assets | Liquidation Value |
| --- | --- |
| Dental Equipment & Supplies | $30,000 |
| Office Supplies/Furniture | $2,500 |
| Accounts Receivable | $160,000[1] |
| Cash on Hand | $30,000 |
| **Total Assets:** | $225,500 |
| | |
| **Less Costs Associated with Liquidation:** | |
| Chapter 7 Professional Fees (Est.) | $20,000 |
| Chapter 7 Trustee Commission | $14,525 |
| **Total Liquidation Costs** | $34,525 |
| | |
| Less Chapter 11 Secured Claim | $163,946 |
| **Net available for Admin/Unsecured Claims** | $27,029 |
| | |
| Less Chapter 11 Administrative Payable Claims | $17,550 |
| Less Chapter 11 Professional Fee Claims | $20,000 |
| **Net Available for (Priority and Non-Priority) Unsecured Creditors** | ($10,521) |
| | |

---

[1] Assumes a 60% collection rate.