KIRBY AISNER & CURLEY LLP
*Attorneys for the Debtor*
700 Post Road, Suite 237
Scarsdale, New York 10583
(914) 401-9500
Erica Aisner, Esq.
eaisner@kacllp.com

Hearing Date: August 1, 2023
Hearing Time: 2:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

SAMEH H. AKNOUK, DENTAL SERVICES, P.C.,

                Debtor.
------------------------------------------------------------X

Chapter 11
Case No. 22-11651-MG
Subchapter V

## DEBTOR'S OBJECTION TO CLAIM NO. 4
## FILED BY NATIONAL LABOR RELATIONS BOARD

**TO:    HONORABLE MARTIN GLENN,
         CHIEF UNITED STATES BANKRUPTCY JUDGE:**

Sameh H. Aknouk, Dental Services, P.C., the above captioned debtor and debtor-in-possession ("Debtor"), by its attorneys, Kirby Aisner & Curley LLP, hereby submits this objection to Proof of Claim No. 4 ("Claim") filed by the National Labor Relations Board ("NLRB") and seeks to reclassify the Claim as a general unsecured claim and to reduce it in an amount to be determined by the Court. In support of the Motion, the Debtor respectfully represents as follows:

### Jurisdiction and Venue

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This proceeding has been initiated pursuant to Bankruptcy Code §§502, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., (the "Bankruptcy Code") and

Rule 3007 of the Federal Rules of Bankruptcy Procedure.

## Background

4. The Debtor is a family owned and operated full-service general and cosmetic dentistry practice located at 1473 West Avenue, which is in the Parkchester neighborhood of Bronx, New York. The Debtor has been in operation for nearly twenty-five years and has operated at the current business premises since 1998 after purchasing an existing practice at that location.

5. At the time that the Debtor began operating the practice there was a Collective Bargaining Agreement ("CBA") in place with Local 553, International Brotherhood of Teamsters, formerly known as Local 854. (the "Union"). The CBA was renewed several times with the last renewal running through April 16, 2020. On June 28, 2022, the Union disclaimed any future interest in representing the Debtor's employees.

6. For many years the Debtor enjoyed great success with healthy revenues and profits. However, because of the COVID-19 pandemic and the associated mandatory shutdowns, the Debtor's practice, not unlike countless other businesses, suffered financially and depleted what cash reserves the Debtor customarily had on hand. To save the business and the numerous individuals which it employs, the Debtor was forced to cut expenses which included cutting back on its hours of operations and by extension, its labor costs. To date, it still has not resumed the pre-pandemic hours of operation.

7. In or about February 2021, the National Labor Relations Board ("NLRB"), issued a finding that the Debtor's changes to the terms and conditions of its employees in terms of hours of work and benefits was in violation of the National Labor Relations Act. In connection with such finding the NLRB directed the Debtor to make whole its employees and that the changes to their employment be rescinded. Unfortunately, the Debtor was unable to comply due to the pandemic,

the shutdowns and its precarious financial position.

8. As a result of the NLRB's Order as well as other Union/ employee related liabilities for which the Debtor lacked the resources to pay, on December 8, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under subchapter V of Chapter 11 of the Bankruptcy Code.

9. The Debtor has continued in possession of its property and the management of its financial affairs as debtor-in-possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or statutory committee has been appointed.

10. Yann Geron, Esq. has been appointed as the subchapter V trustee in this case.

11. On December 8, 2022, the Debtor filed its Schedules of Assets and Liabilities and a Statement of Financial Affairs (the "Schedules").

12. By Order dated February 9, 2023 (the "Bar Date Order"), the Court established March 20, 2023 as the last day by which certain proofs of claim could be timely filed (the "Bar Date"). Proofs of claims filed by governmental units were required to be filed on or before June 6, 2023. In accordance with the Bar Date Order, written notice of the Bar Date was mailed to, among others, all creditors listed on the Schedules.

**The NLRB Proof of Claim (No. 4)**

13. On February 16, 2023, the NLRB timely filed the Claim in the amount of $259,463[1] of which it asserted that $24,615 was entitled to priority ("Claim No. 4"). A copy of Claim No. 4 is annexed as ***Exhibit "A."***

14. As indicated by the NLRB Proof of Claim Statement of Explanation (the

---

[1] There appears to be a discrepancy (in the amount of $2,699) between the total amount sought on the proof of claim form and the breakdown of the claim in its supporting documentation.

3

"Supporting Statement") filed in support of the Claim, the amount sought includes:

>| | |
>|---|---|
>| Backpay: | $118,505 |
>| Expenses: | $1,196 |
>| Excess Tax Liability: | $1,600 |
>| Fund Contributions: | $110,848 |

15. With respect to the priority portion of the Claim, the NLRB asserts, as follows:

   a) $16,181, pursuant to section 507(a)(4) of the Bankruptcy Code for wages purported to be earned in the 180 days prior to the Petition Date;

   b) $2,704, entitled to priority pursuant to section 507(a)(5) of the Bankruptcy Code for contributions to an employee benefit plan; and

   c) $5,730, entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code for administrative claims.

16. The backpay liability asserted by the NLRB relates to the Debtor's reduction of the employees' hours during the pandemic which reduction took place effective **July 20, 2020**, which date is not in dispute.

## OBJECTION TO THE CLAIM

17. By this Objection the Debtor seeks an Order from this Court reclassifying the Claim as a general unsecured claim because no portion of the Claim is entitled to priority treatment under any subsection of section 507 of the Bankruptcy Code. The Debtor further requests that the Court reduce the Claim to the extent that it seeks any amounts attributable to any post-Petition Date period.

18. A filed proof of claim is deemed allowed unless a party in interest objects to the claim. *See* 11 U.S.C. §502(a). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate validity of the claim. *See, e.g., Sherman v. Novak (In re Reilly),* 245 B.R. 768, 733 (2d Cir. 2000); *In re Rockefeller Ctr. Prop.,* 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

**I.     No Basis Exists for Priority Treatment of Any Portion of the Claim**

19.     The NLRB has sought priority treatment for certain portions of its Claim arising out of subsections (2), (4) and (5) of section 507 of the Bankruptcy Code. However, it has not, and cannot, set forth any basis in law or in fact to support such treatment. As such, the Claim should be entirely reclassified to a general unsecured claim.

20.     The presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among all creditors and as such, statutory priorities must be narrowly construed. *In re Trustees of Amalgamated Ins. Fund. v. McFarlin's, Inc.,* 789 F.2d 98, 100 (2d Cir. 1986).

### *A. The Backpay Claim Accrued Outside the 180-Day Priority Period*

21.     Section 507(a)(4) of the Bankruptcy Code affords a fourth level priority to "allowed unsecured claims, but only to the extent of $15,150 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for—(A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; …" 11 U.S.C. §507(a)(4).

22.     Section 507(a)(5) of the Bankruptcy Code affords a fifth level of priority to "allowed unsecured claims for contributions to an employee benefit plan – (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; …[…]" 11 U.S.C. §507(a)(5).

23.     It is well settled that while a claim for backpay is in the nature of wages which could be eligible for priority under 507(a)(4) of the Bankruptcy Code, it must comport with the other statutory requirements for priority treatment. *In re Sher-Del Foods, Inc.,* 186 B.R. 358, 361 (Bankr. W.D.N.Y. 1995). The critical inquiry for the Court in making such a determination is

**when** the unfair labor practice occurred. *Id.* ("[P]riority status will attach to those back pay awards that are earned within the time and monetary limits set forth in the Bankruptcy Code"); *In re 710 Long Ridge Road Operating Company, II, LLC,* 505 B.R. 163, 179 (Bankr. D.N.J, 2014) (finding that, for section 507(a)(4) priority purposes, backpay claims arise on the date an unfair labor practice is committed); 7 Collier Bankruptcy Practice Guide P. 133.02.

24. In considering a similar fact pattern as here, in response to the NLRB assertion of priority for a back pay claim arising out of a debtor's pre-petition refusal to reinstatement striking union employees, the Southern District of Texas Bankruptcy Court held as follows:

> The events giving rise to any potential unfair labor practice liability on the part of Greyhound all occurred prior to Greyhound's filing for bankruptcy protection. Despite the fact that the damages arising from the alleged unfair labor practices continue to accrue post-petition, the claim itself arises from Greyhounds pre-petition conduct and as such, is a pre-petition claim. The mere fact that the alleged damages continue to accrue post-petition does not alter the character of the claim itself.

*In re Eagle Bus Mfg., Inc.,* 158 B.R. 42, 433-4 (Bankr. S.D.T.X. 1993); See also *In re 710 Long Ridge Road Operating Co.,* 505 B.R. at 179.

25. Applying the reasoning outlined in the cases cited above, here, the portions of the Claim which the NLRB asserts priority under sections 507(a)(4) and (5) of the Bankruptcy Code arose at the time the Debtor reduced its employees' hours, which, according to the Supplemental Statement, occurred on July 20, 2020, a date well outside the 180-day pre-Petition Date window which did not begin to run until nearly two years later.

26. Accordingly, for the reasons set forth above, no portion of the Claim is entitled to priority under sections 507(a)(4) or (5) of the Bankruptcy Code.

### a. The Claim Is Not Entitled to Administrative Priority

27. Under the same analysis as above, no portion of the Claim is entitled to administrative priority under section 507(a)(2) of the Bankruptcy Code.

28. Section 507(a)(2) of the Bankruptcy Code affords a second level of priority to administrative expenses allowed under section 503(b) of the Bankruptcy Code. 11 U.S.C. §507(a)(2).

29. Section 503(b) of the Bankruptcy Code provides,

> After a notice and a hearing, there shall be allowed administrative expenses…, including –
>
> (1)(A) the actual, necessary costs and expenses of preserving the estate including –
>
>     (i) wages, salaries, and commissions for services rendered after the commencement of the case; and
>
>     (ii) wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after the commencement of a case under this title, as a result of a violation of Federal or State law by the debtor without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees…"

11 U.S.C. §507(b)(1)(A)(ii).

30. First, there has been no notice or hearing allowing an administrative expense claim in favor of the NLRB and the burden to do so rests with the claimant. *In re Philadelphia Newspapers, LLC,* 433 B.R. 164, 175 (Bankr. E.D.PA 2010).

31. On a substantive note, NLRB cannot satisfy the requirements of 503(b)(1)(A)(i) or

(ii) of the Bankruptcy Code.

32. Any alleged backpay attributable to any post-Petition Date period could not be an "actual, necessary cost and expense of preserving the estate" under section 503(b)(1)(A)(i) of the Bankruptcy Code since the services were not actually rendered and therefore the estate derived no benefit therefrom. See *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d at 101.

33. The NLRB also cannot not satisfy the requirements of section 503(b)(1)(A)(ii) of the Bankruptcy Code. Any backpay award which arises out of an alleged breach of a collective bargaining agreement does not satisfy the requirements of 503(b)(1)(A)(ii) that the award be the result of a violation of federal or state law. *Id.* at 176. As the court in *Philadelphia Newspapers* held, "a collective bargaining agreement is a contract between the union and the employer, and a failure to comply with the agreement should be treated as a breach of contract." *Id.* Also, there has been no judicial proceeding or NLRB proceeding from which an award has been rendered for a post-Petition Date period.

34. Accordingly, for the reasons set forth above, no portion of the Claim is entitled to priority under sections 507(a)(2) of the Bankruptcy Code.

**B. The Claim Amount Should Be Fixed and Reduced As Necessary**

35. While the Claim asserts that $259,463 is due to the NLRB, of which it asserts priority treatment in the amount of $24,615, the Supporting Statement contain certain inconsistent information.

36. Specifically, page 5 of the Supporting Statement for the Claim references Appendix D as the "NLRB's total claim" however, these amounts differ than those included in the proof of claim form as they include higher figures which purport to be updated through the post-Petiton Date of February 11, 2023.

37. While the Claim itself does not appear to include these increased amounts, the Claim also does not reconcile with the breakdown of the components of the Claim as set forth in the Supporting Statement. (See fn. 1.).

38. As such, to the extent that the Claim includes any amounts attributable to a post-Petition Date period, or that the NLRB seeks to increase the Claim to comport with Appendix D or to include other or greater amounts attributable to post-Petition Date period, the Debtor hereby objects and seeks reduction thereof.

**WHEREFORE**, the Debtor respectfully requests that the Claim be reclassified to a general unsecured claim and that it be reduced in an amount determined by the Court, together with such further relief as is just, proper and equitable under the circumstances.

Dated: Scarsdale, New York
June 30, 2023

Respectfully submitted,

KIRBY AISNER & CURLEY LLP
*Attorneys for the Debtor*
700 Post Road, Suite 237
Scarsdale, New York 10583
(914) 401-9500

By: /s/ *Erica Aisner*
      Erica Aisner, Esq.